[No. 6344. Decided December 8, 1906.]

FREDERICK FALK, *Respondent*, v. THE A. F. SCHMITZ ALASKA DREDGING & MINING COMPANY, *Appellant*.[1]

CORPORATIONS—STOCKHOLDERS—ASSIGNMENT OF STOCK—BREACH OF AGREEMENT TO PAY FOR STOCK—RIGHT OF TRUSTEES TO CANCEL STOCK CERTIFICATE. Where stock in a corporation is assigned to the owner, and a certificate duly issued to another, who thereupon becomes the owner thereof, the trustees have no power to forfeit and cancel the stock for the failure of the vendor stockholder to pay the company for the stock, or for failure of the vendee to perform any contract he may have had with his vendor.

Appeal from a judgment of the superior court for King county, Griffin, J., entered March 17, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action brought by a stockholder of a corporation to set aside a resolution cancelling a stock

[1]Reported in 87 Pac. 927.

certificate and to compel the reissuance of the stock.    Affirmed.

*Fred Page-Tustin* and *Arthur & Hutchinson*, for appellant.
*Henry S. Noon* and *James E. Bradford*, for respondent.

RUDKIN, J. — Articles of incorporation of the A. F. Schmitz Alaska Dredging & Mining Company were filed in the office of the secretary of state on the 11th day of July, 1903.   On the 7th day of August, 1903, one A. F. Schmitz subscribed for the entire capital stock of the company, divided into 500,000 shares, of the par value of $1.00 each, and agreed to pay therefor by transferring to the company his interest in certain mining claims and a dredging contract, and placing 100,000 shares of the stock in the treasury of the company, to be disposed of to raise funds to carry on the business of the company.   At the first meeting of the trustees of the company held on the following day a resolution was adopted, reciting the stock subscription as above set forth and accepting the same, and the president and secretary were authorized and directed to issue the entire capital stock to Schmitz as fully paid up, and to receive from him the 100,000 shares in the name of the treasurer, to be disposed of under such regulations as the trustees might adopt.   At the same time a certificate for the 500,000 shares was regularly issued to Schmitz, who receipted for the same, and immediately assigned 100,000 shares thereof to the treasurer of the company as per the subscription agreement, 80,000 shares to one B. B. McCann, 80,000 to the plaintiff Falk, and 150,000 shares to himself as trustee.   A certificate for the 80,000 shares thus assigned to the plaintiff was thereupon issued to him.   He immediately receipted the secretary for the certificate and turned it over to the treasurer of the company under the following provision of the by-laws: "The company will not recognize or accept any orders for stock issued by any member of the company, against any stock pooled by said

members, and none of the pooled stock shall be released until the treasury stock is all sold or the company becomes a dividend-payer," taking his receipt therefor.

Soon after this the plaintiff went to Europe and did not return to Seattle until the month of September, 1904. In the meantime, a new board of trustees, appointed by Schmitz, met, adopted a resolution reciting that the plaintiff had agreed to pay the company a certain unnamed sum of money for the 80,000 shares of promotion stock, and that he had not paid the same, and ordered the cancellation of the stock certificate theretofore issued to the plaintiff. This action was brought to vacate and set aside the resolution cancelling the stock certificate, and to compel the proper officers of the company to reissue the stock to the plaintiff. The court below found in favor of the plaintiff, and the defendant appeals.

Many important questions of corporation law are discussed in the briefs, but there is little room for their application in this case. It is conceded, and must be conceded, that Schmitz subscribed for and became the unqualified owner of the entire capital stock of the company. He assigned 80,000 shares of this stock to the respondent, who received a certificate therefor. The title of Schmitz is not questioned, but it is claimed that the respondent failed to comply with some collateral agreement to sell the treasury stock, or furnish money from his own funds to meet certain obligations of the company. Let us concede this to be true. If such agreement was made with the company, it could not forfeit the stock for a mere breach of this contract. If, on the other hand, the agreement was with Schmitz—which seems to be the case—the company could not forfeit the stock of one stockholder because of his failure to fulfill his agreement with another. The entire defense is built upon the theory that the stock certificate in controversy was never delivered to the respondent, and that a certain sum of money was to be paid before such delivery. But the records of the appellant corporation and all

the testimony show the contrary. The respondent was, therefore, the owner of the stock, regardless of any agreement he may have made with the corporation, its promoters, or stockholders, and the remedy for the violation of any such agreement was not by a forfeiture of the stock. The action of the board of trustees was without warrant or authority of law, and the judgment of the court below is accordingly affirmed.

MOUNT, C. J., ROOT, DUNBAR, and CROW, JJ., concur.

FULLERTON and HADLEY, JJ., took no part.